RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0077p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MARTEZ ROMAL BICKHAM,

*Petitioner-Appellant,*

No. 16-2174

*v.*

THOMAS WINN, Warden,

*Respondent-Appellee.*

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:14-cv-14560—Sean F. Cox, District Judge.

Argued: December 7, 2017

Decided and Filed: April 23, 2018

Before: SILER, WHITE, and THAPAR, Circuit Judges.

---

## COUNSEL

**ARGUED:** Michael L. Mittlestat, STATE APPELLATE DEFENDER OFFICE, Detroit, Michigan, for Appellant. Bruce H. Edwards, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Michael L. Mittlestat, STATE APPELLATE DEFENDER OFFICE, Detroit, Michigan, for Appellant. Bruce H. Edwards, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

SILER, J., delivered the opinion of the court in which THAPAR, J., joined in part and in the result. THAPAR, J. (pg. 7), delivered a separate opinion concurring in part and in the judgment. WHITE, J. (pp. 8–11), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

SILER, Circuit Judge.   Petitioner Martez Bickham appeals the district court's denial of his petition for habeas corpus, in which he argues that the Michigan trial court violated his Sixth Amendment right to a public trial by closing the courtroom during voir dire.

We affirm the district court's denial of Bickham's petition because he failed to comply with Michigan's contemporaneous-objection rule and is, therefore, procedurally barred from pursuing his Sixth Amendment habeas claim.

**FACTUAL AND PROCEDURAL BACKGROUND**

Following a jury trial in Michigan state court, Bickham was convicted of second-degree murder, armed robbery, assault with intent to commit armed robbery, and possession of a firearm during the commission of a felony.   As voir dire was about to commence at Bickham's trial, court officers began to clear the public from the courtroom.   Bickham's counsel objected to the public's removal, citing *Presley v. Georgia*, 558 U.S. 209 (2010), which established that a criminal defendant's Sixth Amendment right to a public trial is violated when a trial court excludes the public from jury selection.   In response to Bickham's objection, the trial court stated:

> The Court is not excluding people from being in the courtroom.   Right now the deputies are removing the spectators or people who are in the courtroom in order to allow . . . the jury panel of over fifty people be allowed in, and so that they are not intermixed with the audience, and so once the whole panel is in, those who fit separately from the jury can be allowed in.   But we cannot bring a jury in with the number of people in this courtroom. They fill the bleachers, and in order to conduct voir dire, we need the jury panel to fit into the courtroom.
>
> [BICKHAM'S COUNSEL]: I understand, Judge, I just wanted to bring that to your attention.
>
> THE COURT: I'm well aware of it. Thank you.

After jury selection concluded, Bickham's attorney asserted:

> Judge, I would just once again under [*Presley*], the other family members of the defendant, supporters and possible witnesses were not allowed to come back in, or were not allowed to be seated in the courtroom during voir dire after they were excluded for the seating.

> THE COURT: All right. Thank you. I would state that there was no additional request made after the court explained the situation, and that the jury panel being [a] fifty-two member panel filled the entire courtroom, except for the small bench that can hold two people. If there was a request for two people to be in, specifically because there was a crowd of probably fifty people in the courtroom, some may be family or friends, or some having to do with other cases, I have no idea who they were. But there was no ruling made on any request. It was not made.

Bickham appealed his conviction, arguing that his Sixth Amendment right to a public trial was violated when the public was removed from the courtroom during jury selection and was not permitted to reenter. *See People v. Bickham*, No. 300952, 2012 WL 4840675, at *3 (Mich. Ct. App. Oct. 11, 2012). The Michigan Court of Appeals affirmed Bickham's convictions, finding that Bickham procedurally defaulted his Sixth Amendment claim when he did not make a contemporaneous objection to the closure of the courtroom. *Id.* at *1, *5. The Michigan Supreme Court denied leave to appeal. *People v. Bickham*, 830 N.W.2d 773 (Mich. 2013).

In 2014, Bickham filed a petition for habeas corpus pursuant to 28 U.S.C. § 2254. On behalf of the warden, Thomas Winn, the State argued in response that Bickham had procedurally defaulted by failing to make a timely objection to the exclusion of the public, but the district court chose to decide the case on the merits. The district court ultimately dismissed the petition and declined to issue a certificate of appealability ("COA"). We then granted Bickham's application for a COA. *Bickham v. Winn*, No. 16-2174, 2017 WL 1661419 (6th Cir. Apr. 3, 2017).

**DISCUSSION**

A petitioner who fails to satisfy state procedural requirements forfeits his right to present a habeas claim. *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000). Thus, before considering the merits of Bickham's claim, we must determine if his cause of action is procedurally

defaulted.  We review this issue de novo.  *Hodges v. Colson*, 727 F.3d 517, 529 (6th Cir. 2013) (citation omitted).

A habeas petitioner procedurally defaults a claim if: (1) the petitioner failed to comply with a state rule; (2) the state enforced the rule against the petitioner; and (3) the rule is an "adequate and independent" state ground foreclosing review of a federal constitutional claim. *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (citation omitted).

All three elements from *Willis* have been met in this case, and Bickham has procedurally defaulted his Sixth Amendment habeas claim.  First, Michigan's contemporaneous-objection rule requires parties to "raise objections at a time when the trial court has an opportunity to correct the error, which could thereby obviate the necessity for further legal proceedings."  *People v. Grant*, 520 N.W.2d 123, 130 (Mich. 1994); *see* Mich. R. Evid. 103(a) (providing that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected" and "a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context"); *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) ("First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.").

Although Bickham objected when the trial court ordered members of the public to exit the courtroom, the court responded that it was only initially removing the public in order to bring in the jury panel and that some of the public would be permitted to reenter after the panel was seated.  Following entry of the jury panel, the court bailiffs apparently did not allow members of the public to reenter.  As noted by the Michigan trial court, Bickham did not request that the court allow members of the public to reenter after the jury panel was seated, and the trial court, therefore, was unable to rule on such a request.  In order to preserve his claim, Bickham should have objected when the jury panel had been seated and members of the public were not permitted to reenter.  He objected a second time following voir dire, but this objection came too late for the court to take corrective actions.  *See Grant*, 520 N.W.2d at 130.

Bickham argues that his failure to object when members of the public were denied reentry was excusable because defense counsel reasonably relied upon the court's assurance that the public would be able to reenter after the jury panel was seated. Cases cited by Bickham in support of this proposition, however, involve trial courts' granting of evidentiary motions prior to trial. *See, e.g.*, *People v. Hernandez*, 377 N.W.2d 729, 735 (Mich. 1985) ("The defense, having moved in limine to exclude testimony concerning K.P. and having obtained a favorable ruling, was entitled to rely upon that determination."). Unlike the rules of evidence, of which we presume courts to have great familiarity, it is implausible that the trial court in this matter could differentiate members of the jury panel from members of the public. Defense counsel likely knew his client's family members, however, and was in a better position to realize their absence. Consequently, Bickham should have objected when members of the public were not permitted to reenter after the jury panel was seated and before voir dire began. His failure to do so amounts to a failure to comply with Michigan's contemporaneous-objection rule. *See Hodge v. Haeberlin*, 579 F.3d 627, 642 (6th Cir. 2009) (stating that, "in determining whether to give preclusive effect to a procedural default, this court must consider whether the petitioner actually failed to comply with a state procedural rule" (citing *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000))).

As to the second element from *Willis*, the Michigan Court of Appeals ruled that Bickham did not preserve his Sixth Amendment challenge with a timely objection. *Bickham*, 2012 WL 4840675, at *3. Thus, the state court enforced the contemporaneous-objection rule against Bickham, and the second element is satisfied. *See Willis*, 351 F.3d at 744.

Third, Michigan precedent makes clear that the contemporaneous-objection rule was "firmly established and regularly followed" in the public-trial context at the time of Bickham's trial. *Ford v. Georgia*, 498 U.S. 411, 424 (1991); *see People v. Gratton*, 309 N.W.2d 609, 610 (Mich. Ct. App. 1981) ("The right to complain about an order of exclusion may be waived either expressly or by an accused's failure to object." (citation omitted)); *People v. Smith*, 282 N.W.2d 227, 229 (Mich. Ct. App. 1979) ("It is generally held that an accused may waive his right to a public trial, either expressly or by failure to object in due time to the entry of an order of exclusion." (citation and internal quotation marks omitted)); *see also Taylor v. McKee*, 649 F.3d

446, 450–51 (6th Cir. 2011) (noting that Michigan has a contemporaneous-objection rule that is "well-established and normally enforced").

Bickham nevertheless suggests that the rule was not firmly established and regularly followed because the Michigan Supreme Court had not specifically weighed in on the rule's application to voir dire at the time of his trial. *See People v. Vaughn*, 821 N.W.2d 288, 296 (Mich. 2012). There is no requirement, however, that the state's highest court approve the rule in a particular context before it becomes "firmly established and regularly followed." *See Bird v. Hurst*, 110 F. App'x 474, 478 (6th Cir. 2004) (rejecting petitioner's contention that three Ohio appellate decisions were insufficient to make a procedural rule firmly established and regularly followed). Rather, the proper inquiry is whether Bickham could be "deemed to have been apprised of [the rule's] existence." *Ford*, 498 U.S. at 423 (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 457–58 (1958)); *see also Luberda v. Trippett*, 211 F.3d 1004, 1007 (6th Cir. 2000). Here, longstanding Michigan precedent and practice apprised Bickham that the contemporaneous-objection rule applied to voir dire objections. The Michigan Supreme Court's decision in *Vaughn* merely confirmed the state's "regularly followed" practice—it did not set out a novel rule. *Cf. Ford*, 498 U.S. at 423.

Thus, the three procedural default elements have been satisfied, *see Willis*, 351 F.3d at 744, and Bickham's Sixth Amendment habeas claim is procedurally defaulted. We may only excuse Bickham's procedural default if he has demonstrated either "cause" for the default and resulting "prejudice" or that the application of the procedural-default doctrine would result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Bickham does not present evidence of either cause and prejudice or a fundamental miscarriage of justice. His Sixth Amendment habeas claim is, therefore, procedurally barred.

**AFFIRMED**.

---

**CONCURRING IN PART AND IN THE JUDGMENT**

---

THAPAR, Circuit Judge, concurring in part and concurring in the judgment. I join Judge Siler's thoughtful opinion with one reservation: We have no business deciding whether the Michigan court properly applied its contemporaneous-objection rule. Accordingly, I would not reconsider whether the timing of Bickham's objections amounted to procedural default under Michigan law. Once we determine that the state court applied a procedural rule that was independent of federal law and adequate to support the state court's judgment, we should go no further.

State courts have the final say on the meaning of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825) (Marshall, C.J.). Accordingly, many of our sister circuits have noted that federal habeas courts should not rethink state-court applications of state procedural-default rules. *See, e.g., Suny v. Pennsylvania*, 687 F. App'x 170, 175 (3d Cir. 2017) ("[F]ederal courts generally will not consider whether the state court properly applied its own default rule to the petitioner's facts."); *Sharpe v. Bell*, 593 F.3d 372, 377 (4th Cir. 2010) ("A federal habeas court does not have license to question a state court's finding of procedural default or to question whether the state court properly applied its own law."); *Sweet v. Delo*, 125 F.3d 1144, 1151 (8th Cir. 1997) ("It is not the office of a federal habeas court to determine that a state court made a mistake of state law."); *Barksdale v. Lane*, 957 F.2d 379, 383–84 (7th Cir. 1992) ("A federal court sitting in habeas corpus is required to respect a state court's finding of waiver or procedural default under state law. Federal courts do not sit to correct errors made by state courts in the interpretation and application of state law." (alterations and citations omitted)); *see also Fuller v. Pacheco*, 531 F. App'x 864, 868 (10th Cir. 2013); *Poland v. Stewart*, 169 F.3d 573, 584 (9th Cir. 1999); *Richardson v. Thigpen*, 883 F.2d 895, 898 (11th Cir. 1989) (per curiam). Traditional notions of federalism dictate that we follow these circuits' lead.

---

**DISSENT**

---

HELENE N. WHITE, Circuit Judge, dissenting.    I do not agree that Bickham procedurally defaulted his Sixth Amendment claim.  The majority states that "Bickham should have objected when the jury panel had been seated and members of the public were not permitted to reenter.  He objected a second time following voir dire, but this objection came too late for the court to take corrective actions."  (Op., at 4.)  Thus, the majority essentially characterizes Bickham's first objection as premature and his second objection as belated.  But, Bickham's first objection was timely, and, having justifiably relied on the trial court's assurance that his right to a public trial would not be violated, Bickham was not required to make a second objection.

## I.    Bickham's First Objection

Michigan courts require parties to "raise objections at a time when the trial court has an opportunity to correct the error . . . ."  *People v. Grant*, 445 Mich. 545, 551 (1994).  Bickham's first objection to the closure was made contemporaneously with the exclusion of the public from the courtroom, and thus timely drew the trial court's attention to a potential constitutional error while there was still an opportunity to address it.  At that point, the trial court was required to "consider alternatives to closure even when they are not offered by the parties" and to "make findings adequate to support the closure" before the "rare" case of closure is warranted.  *Presley v. Georgia*, 558 U.S. 209, 213-15 (2010) (stating that alternatives to closure include "reserving one or more rows for the public; dividing the jury venire panel to reduce courtroom congestion; or instructing prospective jurors not to engage or interact with audience members").[1]

---

[1]In *Presley v. Georgia*, 558 U.S. 209 (2010), "the trial court noticed a lone courtroom observer," "explained that prospective jurors were about to enter and instructed the [observer] that he was not allowed in the courtroom."  558 U.S. at 210.  Presley's counsel objected, but the trial court explained that there was no space for the public to sit in the courtroom.  *Id.*  At a later hearing, after Presley's conviction, evidence was presented showing that, in fact, there was "adequate room for the public" to be seated.  *Id.* at 210-11.  The Supreme Court stated that even assuming "that the trial court had an overriding interest in closing voir dire, it was still incumbent upon it to consider all reasonable alternatives to closure. It did not, and that is all this Court needs to decide."  *Id.* at 216.

Here, the trial court acknowledged that "deputies [were] removing the spectators or people who are in the courtroom[,]" but believed that seating restrictions allowed it to order them to do so. (R. 5-10, PID 664-665.) As *Presley* made clear, however, articulation of a generalized concern over limited space and the number of prospective jurors is not sufficient to rebut the strong presumption of openness. 558 U.S. at 215-216. Even when there is a legitimate possibility that the potential jurors will take up all available seating, the trial court must consider and exhaust all reasonable alternatives before excluding the public. Without considering such alternatives, a trial court cannot constitutionally prevent public access to jury selection. *Presley*, 558 U.S. at 214 (quoting *Press-Enter. Co. v. Superior Court of Cal., Riverside Cty.*, 464 U.S. 501, 511 (1984)).

Importantly, as the parties have stipulated, the exclusion of every member of the public was not necessary to accommodate the venire because a "smaller bench [in the courtroom] could have accommodated at least two members of the public, and the large one at least a dozen." (R. 5-22, PID 1873, ¶6.) The parties have also stipulated that the trial court failed to "consider[] [using additional chairs] as an alternative to barring members of the public from jury selection," (*Id.* at ¶7), and that "the judge did not instruct the deputies to let any specific person or persons back in, and so none were." (*Id.* at 1872, ¶5.) After the trial court's order of ouster, courtroom deputies refused entry to all members of the public: a deputy told Bickham's brother that he could not reenter the courtroom; Bickham's mother observed a deputy telling another woman the same; and a sign was hung on the courtroom door that read: "JURY SELECTION IN PROGRESS DO NOT ENTER." (*Id.* at 1874.)

There is no indication in the record that Bickham's counsel was aware of the local practice of "deny[ing] access to anyone who attempted to enter" while displaying a prohibitory sign. *See United States v. Gupta*, 699 F.3d 682, 690 (2d Cir. 2012) (holding that objection to courtroom closure was not forfeited where the closure took place without defense counsel's knowledge) (quoting *United States v. Tramunti*, 500 F.2d 1334, 1341 n.3 (2d Cir. 1974) ("Defense counsel cannot fairly be penalized for failure to raise at trial an issue of which he was, without his own fault, ignorant.")). The local practice, however, was surely known to the trial court, and it was the trial court's responsibility to ensure the right to a public trial. *See Presley*,

558 U.S. at 213-15 (noting that "[t]he public has a right to be present whether or not any party has asserted the right" and that "[t]rial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials" and must "consider alternatives to closure even when they are not offered by the parties").

Thus, I would hold that Bickham's first objection was contemporaneous with the constitutional violation and adequately preserved his Sixth Amendment claim.

## II.     Bickham's Second Objection

As the majority states, a habeas petitioner procedurally defaults a claim if: (1) the petitioner failed to comply with a state rule; (2) the state enforced the rule against the petitioner; and (3) the rule is an "adequate and independent" state ground foreclosing review of a federal constitutional claim. *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003) (citation omitted). For purposes of federal review in habeas cases, the court may consider as an adequate state procedural rule only a rule that was "firmly established and regularly followed by the time as of which it is to be applied." *Ford v. Georgia*, 498 U.S. 411, 424 (1991).

Bickham preserved his Sixth Amendment claim because he was assured by the trial court that his right to a public trial would not be violated, and he justifiably relied on that assurance. The trial court stated that it was "well aware" of the potential constitutional violation and its obligations under *Presley*. (R. 5-10, 664-665.) Nothing in the trial court's statements indicated that the matter needed to be raised again or that subsequent requests "to readmit any spectators" were required, as the Michigan Court of Appeals concluded. *People v. Bickham*, No. 300952, 2012 WL 4840675, at *3 (Mich. Ct. App. Oct. 11, 2012). Rather, the trial court's comments indicated that spectators would be readmitted to the courtroom unconditionally, and Bickham was entitled to rely on that understanding.

It was not until after it was too late that the trial court informed Bickham of the court's requirement that additional requests be made. Indeed, the parties have stipulated that "[i]n reliance upon [the trial court's] statement that the public would be readmitted once the whole panel entered the courtroom, defense counsel did not ask that any specific people be readmitted to the courtroom during jury selection." (R. 5-22, PID 1872, ¶5.)

Neither the government nor the majority has identified a firmly established and regularly followed rule in Michigan requiring parties to reassert objections after those objections have been acknowledged by the court. Therefore, reliance on such a rule cannot serve as an adequate ground to bar review of Bickham's habeas petition. *See Walker v. Martin*, 562 U.S. 307, 320 (2011) ("A state ground, no doubt, may be found inadequate when 'discretion has been exercised to impose novel and unforeseeable requirements without fair or substantial support in prior state law . . . .'" (citing 16B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4026 (2d ed. 1996))); *Greer v. Mitchell*, 264 F.3d 663, 675 (6th Cir. 2001) ("[W]hen the record reveals that the state court's reliance upon its own rule of procedural default is misplaced, we are reluctant to conclude categorically that federal habeas review of the purportedly defaulted claim is precluded."); *see also Lee v. Kemna*, 534 U.S. 362, 375 (2002) ("'[T]he adequacy of state procedural bars to the assertion of federal questions' . . . is not within the State's prerogative finally to decide; rather, adequacy 'is itself a federal question.'" (quoting *Douglas v. Alabama*, 380 U.S. 415, 422 (1965))).

Thus, accepting that the state court's application of Michigan law was correct, the state court nevertheless applied a rule that was neither firmly established nor regularly followed; thus, it cannot constitute an adequate and independent state ground foreclosing review of Bickham's federal constitutional claim.

## III. Conclusion

Because Bickham did not procedurally default his Sixth Amendment claim, and the denial of a right to a public trial is a structural error that does not require a showing of actual prejudice, *Arizona v. Fulminante*, 499 U.S. 279, 294-95 (1991), I would reverse the judgment of the district court and hold that Bickham is entitled to relief.