RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 19a0242p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MARK GERTH,

　　　　　　　　　　*Petitioner-Appellant*,

　　　　*v.*

WARDEN, ALLEN OAKWOOD CORRECTIONAL INSTITUTION,

　　　　　　　　　　*Respondent-Appellee*.

No. 17-4091

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:16-cv-00598—Susan J. Dlott, District Judge.

Decided and Filed:  September 16, 2019

Before:  DONALD, LARSEN, and NALBANDIAN, Circuit Judges.

_____

### COUNSEL

**ON BRIEF:**  Kort W. Gatterdam, CARPENTER, LIPPS & LELAND, LLP, Columbus, Ohio, for Appellant.  Mary Anne Reese, OFFICE OF THE OHIO ATTORNEY GENERAL, Cincinnati, Ohio, for Appellee.

_____

### OPINION

_____

NALBANDIAN, Circuit Judge.  An Ohio jury convicted Mark Gerth of a dozen counts related to his theft of an SUV and high-speed escape from police, which ended when he plowed into a taxicab in downtown Cincinnati and killed its two occupants.  Gerth now seeks federal habeas relief, alleging that his appellate counsel failed to argue that the trial court improperly

denied his request to proceed pro se.  Because Gerth procedurally defaulted his claim, we AFFIRM the district court's denial of his habeas petition.

# I.

## A.

In the early morning of March 16, 2011, a Cincinnati police officer on patrol in the city's Over-the-Rhine neighborhood spotted a red Toyota SUV and ran its license plate number, only to discover that it had been reported stolen.[1]  The SUV stopped after the officer activated his police cruiser's emergency lights.  But when the officer stepped out of his cruiser to speak with the driver, the SUV sped away.  Officers pursued the SUV through residential streets while the SUV weaved around traffic and blazed through traffic signals.

The pursuit ended tragically.  Speeding over 75 miles-per-hour, the SUV raced through a red light in downtown Cincinnati before swiping the front end of a vehicle and then slamming into a taxicab.  The SUV finally came to rest after hitting a parking meter and catching fire.  The SUV's driver took off on foot, leaving his passenger, who sustained fractures to his leg, inside the burning vehicle.  Rescue workers ultimately freed the passenger from the SUV, and he survived, but the taxicab's occupants fared worse.  The driver, Mohamed Sidi, died instantly, and his passenger, Tonya Hairston, died on her way to the hospital.

Officers apprehended the SUV's driver shortly after he fled on foot and later identified the man as Mark Gerth.  Although Gerth suffered only minor injuries, police took him to a hospital, where a toxicology test revealed that he had alcohol, marijuana, and cocaine in his system.  At trial, a forensic toxicologist testified that the amount of cocaine in Gerth's bloodstream would have undermined Gerth's ability to drive.

The State charged Gerth with a dozen counts related to the crash:  two counts of felony murder, four counts of aggravated vehicular homicide, one count each of aggravated vehicular assault and of vehicular assault, two counts of leaving the scene of the accident, one count of

---

[1]These facts come from the last reasoned decision on Gerth's underlying conviction, *State v. Gerth*, No. C–120392, 2013 WL 1820817 at *1-3 (Ohio Ct. App. May 1, 2013).

failure to comply with the order or signal of a police officer, and one count of receiving stolen property.

**B.**

A half-dozen attorneys have represented Gerth throughout his criminal trial, appeals, and collateral attacks on his conviction and sentence. In August 2011, months before his April 2012 trial date, Gerth moved to replace his first court-appointed attorney. The court granted Gerth's motion and appointed new trial counsel, but in October 2011, Gerth moved to replace that attorney too. The court denied Gerth's motion, explaining, "we do have to move this case along. It has been delayed and really been delayed by continuances and all that, most of or all of which are at the request of the defendant." (R. 5-4, Tr. at PageID #482.)

That ruling did not deter Gerth. When the court held a December 2011 evidentiary hearing, Gerth interrupted as soon as the proceeding began and stated, "I would like to fire [his counsel]." (R. 5-5, Tr. at PageID #490.) Despite the court's attempts to proceed with the hearing, Gerth continued to interrupt until he "voluntarily absented" himself from the courtroom. (*Id.* at PageID #493–94.) Gerth then filed another motion to remove his counsel, and things came to a head when the court addressed that motion at a March 12, 2012 hearing. After extensive crosstalk between the court and Gerth, the court denied the motion, explaining that "[w]e're not continuing the case." (R. 5-7, Tr. at PageID #555.) Gerth then responded, "I would rather represent myself than allow this man to represent me." (*Id.* at PageID #556.) The court denied that request.

After that hearing adjourned, Gerth filed a motion requesting to proceed pro se. The court permitted Gerth to read aloud the motion on April 2, the day of jury selection, and then denied the motion on two grounds. First, the court described Gerth's mental illness, for which Gerth had been hospitalized. (R. 5–8, Tr. at PageID #582–83.) Second, the court explained that Gerth's pro se request was untimely and "an attempt . . . to further delay this trial." (*Id.* at PageID #584.) The court noted that Gerth "had been disruptive in the past hearings," so much so that the court "had to eject him . . . because, again, he attempted to interfere with the administration of justice." (*Id.*) The court found that while Gerth was competent to stand trial,

he was "not competent to make a knowing[], intelligent[] and voluntary waiver of his counsel." (*Id.* at PageID #585.)  So Gerth's second court-appointed attorney represented him at trial.

The jury convicted Gerth on all twelve counts, and the trial court sentenced him to 582-months to life in prison.  A new attorney represented Gerth on appeal and argued that insufficient evidence supported Gerth's convictions for felony murder and receiving stolen property.  But the Ohio Court of Appeals affirmed Gerth's convictions, *Gerth*, 2013 WL 1820817, at *3, and the Ohio Supreme Court declined to exercise discretionary review of that decision, *State v. Gerth*, 994 N.E.2d 464 (Ohio 2013) (table).  The trial court then denied Gerth's untimely pro se petition for post-conviction relief, and the Ohio Court of Appeals affirmed that decision as well.

Gerth then filed his first application to reopen his appeal under Ohio R. App. P. 26(B). Proceeding pro se, Gerth alleged that his appellate counsel was ineffective by not raising three arguments:  (1) that the trial court failed to conduct an inquiry under *Faretta v. California*, 422 U.S. 806 (1975), to determine whether Gerth made his pro se request knowingly, intelligently, and voluntarily, and then improperly denied Gerth's request; (2) that trial counsel rendered ineffective assistance by failing to adequately investigate the case and oppose his consecutive sentences; and (3) that the trial court erred by imposing sentences on both of his two convictions for leaving the scene of the accident.  The Ohio Court of Appeals, which reviewed Gerth's application, discussed only the third assignment of error and ordered a reopened appeal.  The court appointed new appellate counsel and instructed counsel to "present in the appellant's brief an assignment of error concerning the matter identified here as a ground for reopening, along with any other nonfrivolous assignment of error or argument not previously considered."  (R. 5, Ex. 39, Order Grant'g Appl. to Reopen Appeal at PageID #263.)

As instructed, Gerth filed a timely brief addressing three assignments of error.  The first two assignments related to the third ground for reopening the appeal:  Gerth alleged that his first appellate counsel failed to argue that his convictions and sentences for leaving the scene of the accident should have merged.  And Gerth identified a new assignment of error that he did not previously address in his Rule 26(B) application, contending that his first appellate counsel failed

to make a Confrontation Clause argument.  But Gerth's brief did not mention *Faretta* or the trial court's denial of his request to proceed pro se.

Although the Ohio Court of Appeals rejected the Confrontation Clause assignment of error, it sustained the first two assignments of error, vacated Gerth's sentence, and remanded the matter to the trial court to resentence Gerth on just one count of leaving the scene of the accident. *State v. Gerth*, No. C-120393, 2014 WL 5306631, at *3 (Ohio Ct. App. Oct. 17, 2014).  The trial court then resentenced Gerth to a term of 546-months to life in prison.  Gerth appealed his resentencing with a different appellate attorney and alleged that the findings in the record did not support the sentence.  That appeal did not succeed.

After his resentencing, Gerth filed another application to reopen his appeal under Rule 26(B), again through new counsel.  This time, Gerth argued that his second appellate counsel— that is, his appellate counsel on the reopened appeal—rendered ineffective assistance by failing to raise six additional arguments on the reopened appeal.  Only one is relevant here:  his second appellate counsel's failure to argue that the trial court neglected to conduct a *Faretta* inquiry and improperly denied Gerth's request to proceed pro se.

The Ohio Court of Appeals denied Gerth's second application to reopen his appeal, noting that Ohio law "makes no provision for a successive application" and holding that res judicata barred all of Gerth's claims.  (R. 5, Ex. 50, Order Den. Appl. to Reopen Appeal at PageID #393.)  Gerth appealed the denial to the Ohio Supreme Court, but that court declined to review the appeal.  *State v. Gerth,* 36 N.E.3d 190 (Ohio 2015) (table).

## C.

With nowhere to turn in state court, Gerth petitioned for a writ of habeas corpus in federal court under 28 U.S.C. § 2254, raising three grounds for relief from his state court conviction.  Relevant to this appeal, Gerth alleges that his appellate counsel rendered ineffective assistance by not arguing that the trial court failed to conduct a *Faretta* inquiry and improperly denied his request to proceed pro se.[2]  The magistrate judge filed an initial report and

---

[2]We call this claim Gerth's "*Faretta* argument."

recommendation, which concluded that although Gerth had preserved the *Faretta* argument for review, it should be dismissed with prejudice. Nonetheless, the magistrate judge issued a supplemental report recommending that the district court grant a certificate of appealability on Gerth's *Faretta* argument. The district court adopted the recommendations and denied the petition with prejudice while also granting a certificate of appealability on the *Faretta* argument. Gerth appeals the denial of his petition.

## II.

We review de novo the district court's denial of a habeas petition. *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010). Because the district court neither conducted an evidentiary hearing nor made factual findings of its own, we defer to the state court's factual findings and presume that they are correct, absent a showing of clear and convincing evidence to the contrary. *Hodgson v. Warren*, 622 F.3d 591, 598 (6th Cir. 2010).

Before we reach the merits of a habeas petition, however, we review whether the petitioner has satisfied the state procedural requirements for litigating his federal claim in state court. *Bickham v. Winn*, 888 F.3d 248, 250–51 (6th Cir. 2018) (citing *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000)). If he has not satisfied those requirements—and procedurally defaulted his claim—he cannot present the claim in federal court. *Id.* at 251. We review de novo whether the petitioner has procedurally defaulted his claim. *Id.*

## A.

A petitioner seeking a writ of habeas corpus must comply with two procedural requirements, both grounded in the interests of comity and federalism, before a federal court may review the petitioner's claim. First, the petitioner must exhaust all available opportunities to pursue his claim in state court before he may litigate that claim in federal court. 28 U.S.C. § 2254(b)(1)(A). This exhaustion requirement "is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to . . . correct a constitutional violation.'" *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)) (alterations in original). Second, and relatedly, the procedural default doctrine bars our review if the petitioner has not followed the

state's procedural requirements for presenting his claim in state court.  *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  Thus, a federal court will not review a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and is adequate to support the judgment.'"  *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (quoting *Coleman*, 501 U.S. at 729–30).

The government argues that these doctrines preclude us from reviewing Gerth's ineffective assistance of counsel claim.  But Gerth argues that the government itself has forfeited these arguments.  After Gerth filed his habeas petition alleging several examples of ineffective assistance of appellate counsel, the government filed an answer, in which it argued both that Gerth had procedurally defaulted his *Faretta* argument and that the argument was meritless.  The magistrate judge disagreed with the government's procedural default argument, finding that the claim was "preserved for review under 28 U.S.C. § 2554(d)(1)," but nevertheless recommended dismissing the claim on the merits.  (R. 14, R. & R. at PageID #1190.)  The government did not object to the magistrate judge's rejection of its procedural default argument, either after the initial report and recommendation or after the supplemental report and recommendation.  So Gerth contends that the government cannot raise the argument on appeal.

A party may forfeit its ability to raise an issue that the magistrate judge has rejected if the party did not timely object to the magistrate judge's findings and recommendations.  *See* Fed. R. Civ. P. 72(b)(2); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  But that rule is not absolute.  For one, we have held that when a party substantially prevails before a magistrate judge, it "does not waive the right to appeal secondary issues resolved against him by failing to object to the recommendation."  *Souter v. Jones*, 395 F.3d 577, 586 (6th Cir. 2005).  And in the habeas context, we have considered the government's procedural default argument on appeal— even when a magistrate judge recommended denying a habeas petition on the merits and the government did not object to the implicit rejection of its procedural default argument.  *Vanwinkle v. United States*, 645 F.3d 365, 371 (6th Cir. 2011).  In *Vanwinkle*, we explained that after the magistrate judge had ruled in the government's favor on the merits, "the government merely chose not to object to this finding by raising an alternative ground for finding in its favor."  *Id.*

We said it would be "illogical" to require the government to raise an objection in that posture. *Id.* That same reasoning applies here.

**B.**

We turn now to the government's argument that Gerth procedurally defaulted his habeas claim. Gerth's federal claim is that he received ineffective assistance of counsel because his appellate counsel did not raise the *Faretta* argument to overturn his state court conviction. But Gerth, of course, has had several appeals and still more attorneys, so to orient ourselves, we review the history of Gerth's trial and appeals.

Gerth's first opportunity to raise the *Faretta* argument was on the direct appeal of his criminal conviction, although his appellate counsel did not do so. After the Ohio Court of Appeals affirmed his conviction, Gerth sought to reopen his appeal under Rule 26(B), a post-conviction mechanism to challenge the adequacy of appellate counsel. When a criminal defendant applies to reopen his appeal under Rule 26(B), he must present:

> One or more assignments of error or arguments in support of assignments of error that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation[.]

Ohio R. App. P. 26(B)(2)(c). The Ohio Court of Appeals, which considers Rule 26(B) applications, must grant the application "if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." Ohio R. App. P. 26(B)(5). And if the Ohio Court of Appeals grants the application, the case "shall proceed as on an initial appeal in accordance with these rules except that the court may limit its review to those assignments of error and arguments not previously considered." Ohio R. App. P. 26(B)(7).

Gerth filed two applications under Rule 26(B). In his first application, Gerth identified three assignments of error, alleging that his appellate counsel: (1) failed to raise the *Faretta* argument; (2) failed to conduct a meaningful investigation into the facts and law of his case; and (3) failed to argue that the trial court improperly sentenced him on two counts of leaving the scene of an accident. Although the Ohio Court of Appeals granted Gerth's application and reopened the appeal, it never addressed the *Faretta* argument. Instead, the court focused

exclusively on Gerth's third assignment of error and concluded that Gerth "demonstrated a genuine issue as to whether he was denied the effective assistance of counsel." (R. 5, Ex. 39, Order Grant'g Appl. to Reopen Appeal at PageID #263.) And then the court instructed Gerth's new appellate counsel to present in his brief an assignment of error about the sentencing issue, as well as "any other nonfrivolous assignment of error or argument not previously considered." (*Id.*)

Adopting the magistrate judge's recommendations, the district court determined that the Ohio Court of Appeals silently rejected Gerth's *Faretta* argument as a basis for reopening the appeal. The government asks us to draw the same conclusion—and Gerth does not argue otherwise. Although their instincts are correct, their precise conclusion here is not. True, when a party presents a federal claim before a state court and the claim goes unaddressed, we "must *presume* that the federal claim was adjudicated on the merits." *Ross v. Pineda*, 549 F. App'x 444, 455 (6th Cir. 2013) (quoting *Johnson v. Williams*, 568 U.S. 289, 301 (2013)). But we do not draw that inference here because the Ohio Court of Appeals was not adjudicating the issues in Gerth's Rule 26(B) application on the merits. Instead, the Ohio Court of Appeals had to determine whether *any* of the issues Gerth raised warranted reopening his appeal, and it found that Gerth's third assignment of error did. As soon as the Ohio Court of Appeals identified one assignment of error as grounds for reopening the appeal, it could stop its analysis without addressing Gerth's other assignments of error. Thus, we cannot infer that the Ohio Court of Appeals rejected Gerth's *Faretta* argument.

When the Ohio Court of Appeals granted Gerth's 26(B) application, it also appointed Gerth new appellate counsel and instructed Gerth to bring *any* nonfrivolous assignment of error that it had not previously considered. That instruction opened the door for Gerth to raise his *Faretta* argument, but he did not do so. Instead, he raised three different assignments of error on the reopened appeal; the Ohio Court of Appeals sustained two of the three assignments and remanded the case to the trial court for resentencing. *Gerth*, 2014 WL 5306631, at *3.

After the district court resentenced him, Gerth filed his second Rule 26(B) application, this time alleging that his *second* appellate counsel—*i.e.*, his attorney on the reopened appeal—rendered ineffective assistance. In that application, Gerth identified six assignments of error,

including that his second appellate counsel failed to raise the *Faretta* argument on the reopened appeal. The Ohio Court of Appeals, however, did not address whether any of those alleged errors created a genuine issue of whether Gerth received effective assistance of counsel. Rather, the court explained that Rule 26(B) "makes no provision for a successive petition" and that, in any case, "the challenges that Gerth advances here to his appellate counsel's effectiveness in prosecuting his appeal either were or could have been raised in his first application." (R. 5, Ex. 50, J. at PageID #393–94.) Thus, the court held that the "doctrine of res judicata bars him from presenting these challenges in this successive application" and denied Gerth's 26(B) application. (*Id.* at PageID #394.) Gerth appealed the Ohio Court of Appeals' decision to the Ohio Supreme Court, but that court declined to review the appeal.

That leaves us with the following question: does Ohio's res judicata doctrine act as a procedural bar to our review of Gerth's federal claim? To answer that question, we apply the four-part test from *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986) and decline to review Gerth's claim if: (1) Gerth failed to comply with Ohio's res judicata doctrine; (2) Ohio courts enforce that doctrine; (3) res judicata is an adequate and independent state ground for denying review of a constitutional claim; and (4) Gerth cannot show cause and prejudice excusing the default. *See Webb v. Mitchell*, 586 F.3d 383, 397 (6th Cir. 2009) (citing *Maupin*, 785 F.2d at 138).

We consider first whether Gerth has complied with Ohio's res judicata doctrine. The Ohio Supreme Court has described res judicata as the rule:

> [T]hat a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action.

*State v. Davis*, 894 N.E.2d 1221, 1223 (Ohio 2008) (internal quotation marks omitted). That doctrine applies to 26(B) proceedings. Indeed, the Ohio Supreme Court has repeatedly held that "[o]nce ineffective assistance of counsel has been raised and adjudicated, *res judicata* bars its relitigation." *State v. Twyford*, 833 N.E.2d 289, 290 (Ohio 2005) (quoting *State v. Williams*, 790 N.E.2d 299, 300–01 (Ohio 2003)). When the Ohio Court of Appeals granted Gerth's first

26(B) application, appointed Gerth counsel, and reopened Gerth's appeal, Gerth could have raised all of the alleged deficiencies in his representation on direct appeal, including that his first appellate counsel rendered ineffective assistance by not raising the *Faretta* argument.   But Gerth's second appellate counsel never raised the *Faretta* argument on the reopened appeal, and that decision precludes Gerth from raising the argument again in state court.   That Gerth's second appellate counsel may have erred by not raising the *Faretta* argument does not change this underlying fact:  res judicata bars Gerth from raising the *Faretta* argument in a second 26(B) application when he could have raised that argument on the reopened appeal.

The second *Maupin* factor asks us to determine whether Ohio courts enforce res judicata. They do.  *See Twyford*, 833 N.E.2d at 290; *Williams*, 790 N.E.2d at 300–01; *State v. Cheren*, 652 N.E.2d 708, 708–09 (Ohio 1995).  And under the third *Maupin* factor, we must consider whether res judicata is an adequate and independent state ground to foreclose our review of Gerth's federal claim.  We have repeatedly said that it is.  *See, e.g.*, *Landrum v. Mitchell*, 625 F.3d 905, 934 (6th Cir. 2010) ("The Ohio Court of Appeals's reliance on *res judicata* was an adequate and independent state ground to foreclose *habeas* relief in federal court."); *Fautenberry v. Mitchell*, 515 F.3d 614, 633 (6th Cir. 2008); *Williams v. Bagley*, 380 F.3d 932, 967 (6th Cir. 2004); *Martin v. Mitchell*, 280 F.3d 594, 604 (6th Cir. 2002).

Our analysis turns on the fourth *Maupin* factor:  whether Gerth can show cause and prejudice to excuse his default.  In *Murray v. Carrier*, the Supreme Court explained that a petitioner seeking to show cause must identify "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule."  477 U.S. 478, 488 (1986).  One such example is "attorney error rising to the level of ineffective assistance of counsel."  *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004); *see also Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray*, 477 U.S. at 488–89).

Gerth argues that his second appellate counsel rendered ineffective assistance by not raising the *Faretta* argument on the reopened appeal—and that the deficient representation serves as cause for his procedural default.  Gerth's argument has merit only if his attorney's ineffectiveness amounted to a constitutional violation.  *Coleman*, 501 U.S. at 754.  And that turns on whether Gerth had a constitutional right to counsel on the reopened appeal:  there can be no

constitutional violation if Gerth had no constitutional right to counsel at the stage of the proceeding allegedly tainted by ineffective assistance. *See Carter v. Mitchell*, 693 F.3d 555, 565 (6th Cir. 2012). So we must determine whether Gerth had a constitutional right to counsel after the Ohio Court of Appeals granted his first Rule 26(B) application and reopened his appeal.

There is no dispute that Gerth had a constitutional right to counsel on direct appeal. *See, e.g.*, *Evitts v. Lucey*, 469 U.S. 387, 393–94 (1985); *Douglas v. California*, 372 U.S. 353 (1963). But it is equally well-settled that Gerth *did not* have a constitutional right to counsel when he applied to reopen his appeal before the Ohio Court of Appeals. The Supreme Court has explained that a defendant has "no constitutional right to an attorney in state post-conviction proceedings" and therefore "cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman*, 501 U.S. at 752. And sitting en banc, we concluded that the 26(B) application is "part of the collateral, postconviction process rather than direct review" and held that a defendant who applies to reopen his appeal under Rule 26(B) has no constitutional right to counsel *at the application stage*. *Lopez v. Wilson*, 426 F.3d 339, 351 (6th Cir. 2005) (en banc). But *Lopez* does not answer our question: whether Gerth had a constitutional right to counsel after the Ohio Court of Appeals granted his 26(B) application, appointed Gerth counsel, and *reopened the appeal*.

We hold that a reopened appeal under Rule 26(B) is also part of the collateral, postconviction process—and that Gerth therefore did not have a constitutional right to counsel at that stage of the proceeding. Rule 26(B)'s text makes clear that a reopened appeal is not simply a do-over of the direct appeal. For one, the rule limits the arguments that the petitioner can raise on the reopened appeal. The court itself may "limit its review to those assignments of error and arguments not previously considered [on direct appeal]." Ohio R. App. P. 26(B)(7). And although the rule states that "[i]f the application is granted, the case shall proceed as on an initial appeal," *id.*, the petitioner cannot make *just any* legal argument on the reopened appeal. Rather, the Ohio Court of Appeals "shall vacate its prior judgment and enter the appropriate judgment" only if it "finds that the performance of appellate counsel was deficient and the applicant was prejudiced by that deficiency." Ohio R. App. P. 26(B)(9). "If the court does not so find, the court shall issue an order confirming its prior judgment." *Id.* These rules tell us that the

petitioner must present all arguments on the reopened appeal within the framework of a claim for ineffective assistance of appellate counsel.  Rather than simply identify trial court errors as he would on direct appeal, the petitioner must show that his appellate counsel made an objectively unreasonable decision by not raising the trial court error and that he suffered prejudice because of that decision.  *See Webb*, 586 F.3d at 399.[3]

Our conclusion that a reopened appeal is a collateral proceeding matches the Ohio Supreme Court's precedents.  In *Morgan v. Eads*, the Ohio Supreme Court described Rule 26(B) as creating a "separate collateral opportunity to raise ineffective-appellate-counsel claims" and explained that a successful application "was never intended to constitute part of the original appeal."  818 N.E.2d 1157, 1158 (Ohio 2004).  The *Morgan* court carefully studied the rule, distinguishing the Ohio Court of Appeals' jurisdiction on the reopened appeal from that court's jurisdiction over direct appeals and providing several reasons why Rule 26(B) proceedings are collateral.  First, the court explained that the petitioner must submit additional information outside the trial court record to support his ineffective assistance of counsel claim; on direct appeal, the appellate court may consider only the trial record.  *Id.* at 1159.  Second, the court noted that the Ohio Court of Appeals ordinarily lacks jurisdiction to alter or amend its judgment if an appeal is pending before the Ohio Supreme Court.  But the Ohio Court of Appeals can reopen an appeal under Rule 26(B), even as the direct appeal is pending before the Ohio Supreme Court.  *Id.* at 1159–60.  Third, the court held that when the Ohio Court of Appeals grants the 26(B) application and reopens the appeal, the original appellate decision "remains in effect until vacated."  *Id.* at 1160.  Thus, the 26(B) application "does not start the appeal process all over again," just as a successful postconviction petition under Ohio Rev. Code § 2953.21 "is not equivalent to a new trial."  *Id.*  Finally, the court clarified that although the Ohio Court of Appeals must appoint counsel when it reopens an appeal, the United States Constitution does not

---

[3]Decisions from the Ohio Court of Appeals also underscore that the petitioner must present his substantive arguments on the reopened appeal within the ineffective assistance of counsel framework.  That court has declined to consider assignments of error that a petitioner presented on the reopened appeal because the assignments failed to allege ineffective assistance of appellate counsel.  *See, e.g.*, *State v. Hamilton*, No. 96 CA 15A, 2000 WL 1591117, at \*2 (Ohio Ct. App. Oct. 23, 2000).  Indeed, the court explained that those assignments "are not properly before us in accordance with [Rule] 26(B)."  *Id.*; *see also State v. Jones*, No. 96-A-0009, 1999 WL 689944, at \*2 (Ohio Ct. App. Aug. 27, 1999) (Rule 26(B) requires petitioner to challenge appellate counsel's effectiveness rather than simply identify trial court errors).  Under these decisions, the reopened appeal is procedurally and substantively distinct from the direct appeal.

compel that outcome. That Ohio appoints counsel in such cases reflects a policy choice rather than a constitutional mandate. *Id.* at 1160–61. For those reasons, the Ohio Supreme Court described the reopened appeal as "an attack on the outcome of [the direct] appeal, not a part of the appeal," and we find that conclusion persuasive. *Id.* at 1160. Because Gerth had no constitutional right to counsel on the reopened appeal, his attorney's performance cannot excuse the procedural default of the *Faretta* argument.

As always, there is an exception to the rule. Although the Supreme Court held in *Coleman* that ineffective assistance of counsel in a postconviction proceeding cannot qualify as cause to excuse the petitioner's procedural default, 501 U.S. at 752, the Court has since identified a "narrow exception" to that general rule. *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). In *Martinez*, the Court considered whether a petitioner could show cause to excuse his procedural default in a post-conviction proceeding where—critically—that proceeding presented his first opportunity to allege ineffective assistance of trial counsel. *Id.* at 5. The Court remarked that because Arizona prohibited criminal defendants from raising ineffective assistance of trial counsel arguments on direct appeal, the post-conviction proceeding "is in many ways the equivalent of a prisoner's direct appeal as to the ineffective-assistance claim." *Id.* at 11. Finding it "necessary to modify the unqualified statement in *Coleman* that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as a cause to excuse a procedural default," the Court announced a "narrow exception" to *Coleman*: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id.* at 9.

The Court's holding in *Martinez* does not, however, dictate a similar outcome here. Indeed, the Court's recent decision in *Davila* forecloses any support that *Martinez* may have offered to excuse Gerth's procedural default. In *Davila*, the petitioner argued that his state-appointed postconviction counsel failed to raise his ineffective assistance of appellate counsel claim in his state habeas petition—and that the error provided cause to excuse his procedural default. 137 S. Ct. at 2063. Much like the petitioner in *Martinez*, the petitioner in *Davila* could not raise his ineffective assistance of appellate counsel claim until the postconviction, state habeas proceeding. The Court, however, distinguished *Martinez*, which "was principally

concerned about *trial errors*—in particular, claims of ineffective assistance of *trial* counsel"— from the "distinct context of ineffective assistance of appellate counsel." *Id.* at 2066–67. So out of "respect [for] that judgment," the Court declined to expand *Martinez* to procedurally defaulted claims of ineffective assistance of appellate counsel. *Id.*

Because Gerth had no constitutional right to counsel on the reopened appeal, he cannot excuse his procedural default. *See Coleman*, 501 U.S. at 752.

## III.

For these reasons, we AFFIRM the district court's denial of Gerth's petition for habeas corpus.