NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0461n.06

No. 21-2657

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 16, 2022
DEBORAH S. HUNT, Clerk

JOSEPH MICHAEL McINTYRE,

    Petitioner-Appellant,

v.

JAMES R. SCHIEBNER, Warden,

    Respondent-Appellee.

)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

OPINION

---

Before: GIBBONS, GRIFFIN, and STRANCH, Circuit Judges.

GRIFFIN, Circuit Judge.

Accused of arson and home invasion in Michigan state court, Joseph McIntyre presented only an insanity defense—he admitted entering houses and setting fires but claimed that he could not control the urges he felt to do so. During closing argument, the assistant county prosecutor told the jury that McIntyre would "skate" or "get off" on the charges if they found him not guilty by reason of insanity. She also compared him to foot fetishists and child pornographers, arguing that an odd urge does not render a person legally insane. Defense counsel did not object to these statements, and the jury convicted McIntyre on all counts. He appealed to the Michigan Court of Appeals, arguing that the prosecutor's statements violated his right to a fair trial under the Due Process Clause of the Fourteenth Amendment. The court found the unobjected-to statements concerning, but not plainly erroneous. On habeas review, we find this claim to be procedurally defaulted. Accordingly, we affirm the district court's judgment denying McIntyre's petition for habeas corpus.

I.

Petitioner Joseph McIntyre was tried and convicted of eight counts of arson and three counts of first-degree home invasion. The Michigan Court of Appeals summarized the facts of the case as follows:

> Eleven fires occurred in Grand Rapids, mostly on the southeast side of town and in garages, between July 18, 2010, and October 17, 2010. A task force was created to apprehend the arsonist. Shortly after its creation, the task force received an anonymous tip that defendant was the arsonist. After receiving the tip, task force members interviewed friends and members of defendant's family and then placed him under surveillance. In the early morning hours of October 17, 2010, task force members watched as defendant left his house and followed him to a home on 32nd Street in Grand Rapids. After defendant drove from the location, police officers moved in to the location and discovered a fire which had been set in an undetached garage. Defendant was stopped a short time later and taken into custody. He confessed to setting the fires, except for two of them, but claimed that he was insane at the time of the fires.

*People v. McIntyre*, No. 308394, 2014 WL 667633, at *1 (Mich. Ct. App. Feb. 18, 2014) (per curiam). We presume that these facts are correct, absent a showing of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see Hodgson v. Warren*, 622 F.3d 591, 598 (6th Cir. 2010).

The focus of this appeal is the prosecutor's closing argument. Early in her closing argument, the prosecutor said "[t]he only way he skates on this, gets off of this, is if the defense has proven its burden to prove by a preponderance that he is legally insane." She went on to argue that "if he is found legally insane at the time of his offenses, it excuses his crimes. . . . Finding someone legally insane means he's not held responsible. Not responsible for his actions. That's what it's saying. And his crimes go unpunished. That is the effect." Later on, the prosecutor reiterated this theme: "If he is mentally ill, as defined by the statute, it should be clear. It should be obvious. Those are the people entitled to this defense. Entitled to a walk. Treatment. Not punishment. It ain't him." We refer to these comments as the "punishment" comments.

Defense counsel did not object to the punishment comments, but in response requested the following:

> Your Honor, during the prosecutor's closing argument, basically it included that there would be no – that Mr. McIntyre's conduct would go unpunished unless the jury found him guilty, basically. It didn't say guilty, guilty but mentally ill, but basically that – that – that there wouldn't be any consequence if he were found not guilty by reason of insanity. And I know that in my response to that I noted [Michigan Model Criminal Jury Instruction] 3.13; penalty – it is the duty of the judge to fix the penalty within the limits provided by the law, that the limits provided by the law on that verdict would include continued court oversight, that it's not as though he's going unpunished.
>
> * * *
>
> [I]t's our request that since that issue has been raised that there be an instruction from the Court on what would happen with the – with a not guilty by reason of insanity, rather than just leaving it out there that Mr. McIntyre would walk out of the court tomorrow if he were found not guilty by reason of insanity because that just is not my understanding of the state of the law.

The trial court denied the request but instructed the jury that "[p]ossible penalties should not influence your decision, it is the duty of the judge to fix the penalty within limits provided by law."

The prosecutor's closing statement also compared McIntyre to someone who gets "enjoyment out of things that you think are weird":

> People like feet, I hear. You know? Some people have a foot fetish. Really? Is there anything much uglier than a foot? But, you know, people get enjoyment out of feet. People get enjoyment out of pornography. Some get enjoyment out of kiddie porn. Does that sound fun to you? Does that sound enjoyable or exciting to you? Looking at little kids naked or doing stuff with each other? It does to some people. It doesn't make them legally insane, it just means they're different from you. Weird? Yeah. Different? Yeah. Odd? You bet. But it doesn't make them legally insane.

We refer to these comments as the "comparison" comments. No objection was made or curative instruction requested regarding these comments.

McIntyre appealed his convictions and sentence. Among other issues, he raised the prosecutorial misconduct claim that is the subject of this habeas appeal. *McIntyre*, 2014 WL

-3-

667633, at *12. The Michigan Court of Appeals concluded that the claim was unpreserved because trial counsel "did not object to the alleged improper statements." *Id.* As a consequence, it reviewed only for plain error. *Id.* While the punishment comments were "of concern," the Michigan Court of Appeals could not "find, on an examination of the whole of [the prosecutor's] statements, that they constituted plain error." *Id.* at *13. The Court of Appeals also concluded that the comparison comments, when viewed in context, were "not plainly erroneous." *Id.* at *14. And in any event, the Michigan Court of Appeals held, even if the prosecutor's comments were erroneous, they did not affect the outcome of trial, given the instruction about penalties given to the jury. *Id.* Thus, they did not prejudice McIntyre and he was not entitled to relief. *Id.* The Michigan Supreme Court denied leave to appeal. *People v. McIntyre*, 852 N.W.2d 625 (Mich. 2014) (mem.).

McIntyre filed a timely petition for habeas corpus in district court. The magistrate judge issued a report and recommendation finding that the petition was meritless but granting a certificate of appealability regarding the claim of prosecutorial misconduct during closing arguments. Over McIntyre's objection, the district court adopted that report and recommendation. McIntyre timely appealed.

II.

Although the district court resolved McIntyre's claim on the merits, we begin and end with the Warden's argument (which he also advanced in the district court) that the claim is procedurally defaulted. *See Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 436 (6th Cir. 2006) ("We may affirm on any grounds supported by the record, even though they may be different from the grounds relied on by the district court.") (brackets and citation omitted). Federal courts "may not review federal claims that were procedurally defaulted in state courts." *Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020) (citation omitted). Whether a claim is procedurally defaulted is a

question we review de novo. *Hodges v. Colson*, 727 F.3d 517, 529 (6th Cir. 2013). In conducting our review, we look to the last reasoned state-court decision. *Theriot*, 982 F.3d at 1003. Here, that is the Michigan Court of Appeals' decision.

The Warden argues that McIntyre's claim is procedurally defaulted because the Michigan Court of Appeals properly applied its own procedural bar, the contemporaneous-objection rule. That rule requires parties to "raise objections at a time when the trial court has an opportunity to correct the error, which could thereby obviate the necessity for further legal proceedings[.]" *People v. Grant*, 520 N.W.2d 123, 130 (Mich. 1994); *see also* Mich. R. Evid. 103(a). When a defendant does not timely object to a claim of constitutional error, the Michigan courts will review that claim only for plain error.[1] *See People v. Carines*, 597 N.W.2d 130, 137–39 (Mich. 1999). That is how the Michigan Court of Appeals treated McIntyre's prosecutorial-misconduct claim.

"[W]hen a state court decline[s] to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement[,] . . . the state judgment rests on independent and adequate state procedural grounds," and we cannot review those federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991). To determine whether a claim has been defaulted by a prisoner's "failure to observe a state procedural rule," we "must go through a complicated analysis." *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. "Second, the court must decide whether the state courts actually enforced the state procedural sanction." *Id*. "Third, the court must decide whether the

---

[1]The parties discuss the contemporaneous-objection rule and plain error almost interchangeably, as if they are both the procedural rule. While they go hand in hand, only the contemporaneous-objection rule is a procedural rule, and application of the plain-error standard of review is merely the consequence of failing to comply with the rule. Thus, in this opinion, we refer to the rule as the contemporaneous-objection rule.

state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." *Id*. To overcome this bar, the petitioner must demonstrate "that there was cause for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error." *Id*. (internal quotation marks omitted).

On the first question, the parties agree that the contemporaneous-objection rule is generally applicable but disagree as to whether McIntyre complied with it. We find it useful to consider separately the punishment comments and the comparison comments. There is no question that defense counsel failed to object to the comparison comments. But McIntyre argues that defense counsel *did* object to the punishment comments after the prosecutor finished her closing argument. We disagree.

The Michigan Court of Appeals found that defense counsel did not object to the punishment comments, and in any event, he did not raise the issue contemporaneously. *See McIntyre*, 2014 WL 667633, at *12. Absent a showing that this finding of fact is clearly erroneous, we must accept it as true. *Hodgson*, 622 F.3d at 598. Nothing in the record permits us to set these facts aside—defense counsel neither objected to the prosecutor's statements nor argued their impropriety to the trial court; rather, all he did was "request that since that issue has been raised that there be an instruction from the Court on [punishment.]" This request for an unspecific jury instruction is not an objection. McIntyre is bound by the Michigan Court of Appeals' determination that there was no objection, let alone a contemporaneous one. He therefore failed to comply with the relevant state procedural rule.

The parties agree that the Michigan Court of Appeals enforced the procedural rule against McIntyre (the second *Maupin* question), s*ee McIntyre*, 2014 WL 667633, at *12, and its "decision to employ plain error review to otherwise abandoned arguments does not excuse [McIntyre's]

default," *Williams v. Burt*, 949 F.3d 966, 973 (6th Cir. 2020). And, as McIntyre's counsel conceded at oral argument (retreating from his briefing), this procedural bar is an adequate and independent state ground (the third *Maupin* question). *See, e.g.*, *Bickham v. Winn*, 888 F.3d 248, 252 (6th Cir. 2018). The state court's application of such a procedural bar would "[o]rdinarily . . . be adequate to foreclose review" of McIntyre's claim. *Lee v. Kemna*, 534 U.S. 362, 376 (2002).

But exceptional cases exist, "in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Id.* McIntyre argues that this is such a case, claiming that application of the contemporaneous-objection rule "unfairly penalizes [him] and constitutes an exorbitant penalty in the circumstances of this case." In support of this position, he cites *Gibbs v. Huss*, in which we concluded that enforcement of the contemporaneous-objection rule against a defendant might be inadequate to foreclose review of a public trial claim. 12 F.4th 544, 554 (6th Cir. 2021). But *Gibbs* is factually distinguishable: Gibbs did not object when the trial court closed voir dire to the public, but he may not have been aware of the courtroom's closure. *Id.* at 553. We concluded that there is no obligation for a defendant to object to a situation of which he is unaware, so in the unique circumstances that case presented, the state could not rely on the "general adequacy of the contemporaneous-objection rule." *Id.* Unlike in *Gibbs*, McIntyre's counsel was aware of the alleged error at the time it happened. Therefore, *Gibbs* and its analysis of Michigan's contemporaneous-objection rule are inapposite, and the "general adequacy of the contemporaneous-objection rule" applies. *Id.*

McIntyre also argues that trial counsel's failure to object "would serve no purpose because it would have brought the jury's attention to the prosecutor[']s statements." This, he argues in a single paragraph, would "impose an exorbitant cost" on him and should not bar habeas review. But he does not explain how enforcing the contemporaneous-objection rule would impose an

"exorbitant" cost on him. We decline to address this skeletal argument. *See, e.g.*, *Vander Boegh v. EnergySolutions, Inc.*, 772 F.3d 1056, 1063 (6th Cir. 2014).

Michigan's contemporaneous-objection rule is an adequate and independent state ground. The state court's application of this rule to McIntyre's claim renders it procedurally defaulted. McIntyre has not developed his argument that he has cause and prejudice to excuse the default, so we cannot review his claim.

III.

For these reasons, the judgment of the district court is affirmed.